UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI COURTHOUSE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) DOCKET NO.:  19-MJ-02735 |
| | ) |
| v. | ) |
| | ) |
| RICHARD LAURENCE KADISH | ) |
| | ) |

**THE GOVERNMENT'S MEMORANDUM
IN SUPPORT OF ITS MOTION FOR PRETRIAL DETENTION**

The United States of America, by and through Robert Zink, Acting Chief, Department of Justice, Criminal Division, Fraud Section, respectfully submits this memorandum in support of the Government's motion for pretrial detention of defendant Richard Laurence Kadish pursuant to 18 U.S.C. § 1342.

**BACKGROUND**

On March 5, 2019, six men, including the defendant Richard Laurence Kadish, were charged in an indictment returned in the Northern District of Texas with one count of conspiracy to commit mail and wire fraud (18 USC § 1349), 10 counts of mail fraud (18 USC § 1341), and 10 counts of wire fraud (18 USC § 1343).  In summary, the indictment alleges that, for five years, the defendants were involved in a high-yield investment fraud scheme selling unregistered stock in a company called EarthWater by telemarketing and email marketing, among other means. Three of the defendants were purportedly executives at EarthWater.  The other three defendants were independent salespeople, who promoted and sold EarthWater stock.  Kadish was one of the independent salespeople and did all his EarthWater-related business as Energy Farms, Inc. and National IRPR, Inc.

The indictment alleges that the defendants made a series of false and misleading statements to induce victims to purchase EarthWater stock. The defendants falsely claimed that victim investors only had a brief opportunity to purchase EarthWater stock for anywhere from $.10 to $.50 per share in an unregistered offering before EarthWater launched an initial public offering (IPO) or was acquired by a large well-known company and EarthWater's stock price would increase anywhere from 10- to 50- times the purchase price. In reality, EarthWater allegedly never initiated an IPO, or a merger or acquisition.

The indictment also alleges that defendants falsely represented to victim investors that EarthWater would use 90 percent of invested funds to grow its business and expand operations, and that any fees paid to broker-dealers with respect to the sale of EarthWater stock would not exceed 10 percent of the purchase price of the shares. In reality, the three defendants who worked at EarthWater allegedly agreed to split victim investors' funds 50-50 with Kadish and the other defendants who sold EarthWater stock. As a result, nearly half of all of the money victims invested in EarthWater allegedly went directly into the pockets of the individuals who sold them the stock.

The evidence will show that Kadish participated in drafting the promotional materials and investor presentations, some of which were stamped with the name of Kadish's company – National IRPR. These documents falsely stated that around 90 percent of the money raise through stock sales would be reinvested in EarthWater and that, at most, 10 percent would be paid to salespeople like Kadish. The evidence will also show that, for five years, Kadish regularly submitted invoices to EarthWater seeking approximately half of the money that he raised from each victim (or that someone working for Kadish raised), and that he was paid.

Based on the investigation to date, total losses from the conspiracy are expected to be at least $10 million and the total number of victims is expected to be at least 250. The defendants, including Kadish, are alleged to have targeted the elderly, as well as other vulnerable members of the community. Moreover, at least 14 victims lost over $100,000 in the scheme. EarthWater paid Kadish almost $2.5 million (with the money being funneled through bank accounts in the name of Energy Farms or National IRPR).

While the maximum penalties for the charged offenses are 20 years imprisonment for each count, under 18 U.S.C. § 2326, Kadish may be subject to an enhanced penalty of up to 10 additional years of imprisonment.

## ARGUMENT

The Court should grant the Government's motion for pretrial detention because Kadish poses a serious risk of flight.

The factors of family ties, length of time in the community, and community ties all weigh in favor of pretrial detention. At the time that Kadish was indicted, he was in the middle of beginning a new life with a new family in a new country. From at least 2014 through the present, Kadish has frequently traveled to Brazil, staying anywhere from several weeks to several months. At the time of his arrest, after being Mirandized, Kadish told U.S. Postal Inspector Jan Bodon that he has a fiancée in Brazil and that his fiancée is pregnant. He also told Inspector Bodon that he recently sold his residence in Miami and that he and his pregnant fiancée plan to split their time between the United States and Brazil. The fact that Kadish was planning to move from the United States to Brazil before he learned of his indictment is alone sufficient to find that he poses a serious risk of flight. The fact that he is now facing up to 30 years imprisonment makes that risk

overwhelming. There can be no doubt that the desire to be with a new spouse and a newborn child presents one of the strongest incentives to flee, particularly if that spouse and child are in a foreign country and extradition could take years.

That Kadish poses a serious flight risk is underscored by the fact that, when interviewed by PTS, he presented a very different picture that downplayed the risk of flight. He told PTS that he had a "girlfriend," not a fiancée. He also told PTS that he and his girlfriend did not currently have a child, but omitted to mention that they were expecting to have one soon. These facts plainly contradict the statements Kadish made to Inspector Bodon and suggest that he was trying to conceal the strength of his ties to Brazil from PTS.

The employment factor also weighs heavily in favor of pretrial detention. Kadish told PTS that his only job for 25 years is selling securities. Kadish, however, is not qualified to sell securities. He does not have a college degree or any professional licenses. He almost definitely could not obtain employment at a legitimate broker-dealer because he was convicted of grand theft and has a history of alcohol and substance abuse. At the time of his arrest, after being Mirandized, he told Inspector Bodon that he was self-employed and that the name of his company was National IRPR. As explained above, National IRPR is at the heart of the high-yield investment fraud scheme charged in the indictment. Based on the investigation to date, approximately 99 percent of the money in the National IRPR account comes from the EarthWater fraud. Kadish therefore does not have a legitimate source of income that would serve as a tie to the United States or that he would be relinquishing if detained.

Finally, Kadish told PTS that, if released on bond, he would reside with his mother, Lenore. Lenore confirmed that she would be agreeable to that arrangement. Lenore, however, cannot

reasonably be relied on to prevent Kadish from fleeing because, whether knowingly or unknowingly, she is involved in the fraudulent scheme charged in the indictment.

Based on bank records subpoenaed from Wells Fargo, Lenore is listed in the account opening documents for National IRPR as one of two "Owner[s] with Control of the Entity," the other being Kadish.  (*See* Exhibit 1.)  She is also listed as one of two "Signer[s]" on National IRPR's account, again the other being Kadish.  (*Id.*)  Lenore signed the account opening documents for National IRPR.  (*Id.*)  In addition, Lenore signed checks distributing the proceeds of the fraud to Kadish's co-conspirators.  (*See, e.g.*, Exhibit 2.)  Lenore also received and personally benefitted from the proceeds of the fraud, receiving checks written out of the Energy Farms and National IRPR accounts.  (*See, e.g.*, Exhibits 2 and 3.)  In some instances, Lenore wrote and signed the checks to herself.  (*Id.*)

Whether knowingly or unknowingly, Kadish's sister – Melissa Johnson – was also involved in the fraud charged in the indictment.   Based on bank records subpoenaed from Wells Fargo, Johnson was a co-signer on the Energy Farms account with Kadish.  (Exhibit 4.)  Like Lenore, Johnson signed the account opening statements.  (*Id.*)  In addition, Johnson signed checks distributing the proceeds of the fraud to Kadish's co-conspirators.  (*See, e.g.*, Exhibit 5.)  Johnson also received and personally benefitted from the proceeds of the fraud, receiving checks written out of the Energy Farms and National IRPR accounts.  (*See, e.g.*, Exhibit 6.)  In some instances, Johnson wrote and signed the checks to herself.  (*See, e.g.*, Exhibit 5.)

Based on these facts, Kadish's family members cannot be relied on to reasonably assure his appearance or to prevent him from fleeing the United States, particularly in light of Kadish's strong incentives to join his pregnant fiancée in Brazil.

## **CONCLUSION**

For all of the foregoing reasons, the Government respectfully requests that the Court grant its motion to for pretrial detention of defendant Richard Laurence Kadish pursuant to 18 U.S.C. § 3142.

Respectfully submitted, on this 10th day of May 2019.

>ROBERT ZINK
>ACTING CHIEF, FRAUD SECTION
>Criminal Division, U.S. Department of Justice
>
>//s// Christopher Fenton
>CHRISTOPHER FENTON
>Trial Attorney
>Christopher.Fenton@usdoj.gov
>WILLIAM H. BOWNE
>Trial Attorney
>William.bowne2@usdoj.gov
>Fraud Section, Criminal Division
>United States Department of Justice
>1400 New York Avenue, NW
>Washington, D.C. 20005
>Direct Line: (202) 514-0660/Fax: (202) 514-0152

CERTIFICATE OF SERVICE

      Undersigned counsel hereby certifies that on the above date this document was filed via ECF and, thereby, all parties were served.

                                    //s// CHRISTOPHER FENTON
                                    CHRISTOPHER FENTON
                                    Trial Attorney
                                    Christopher.Fenton@usdoj.gov
                                    Fraud Section, Criminal Division
                                    United States Department of Justice
                                    1400 New York Avenue, NW
                                    Washington, D.C. 20005
                                    Direct Line: (202) 514-0660/Fax: (202) 514-0152